IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SONIA QUINTANA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 05 C 1568 |
| ) | |
| JoANNE B. BARNHART, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Sonia Quintana claims she has been disabled since November 14, 2001. Following initial denials of benefits, a hearing was held before an administrative law judge ("ALJ"). At the hearing, plaintiff was represented by an attorney. Applying the familiar five-step analysis, see 20 C.F.R. § 404.1520(a)(4); Prochaska v. Barnhart, 454 F.3d 731, 734 (7th Cir. 2006), the ALJ found: (1) plaintiff was not engaged in substantial gainful activity; (2) she had severe physical impairments, but no severe mental impairment; (3) none of her physical impairments equaled one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4; and (4) she could still perform past relevant work; or, alternatively, (5) there were a significant number of jobs in the economy that she could perform.

Thus, it was found that plaintiff was not entitled to disability benefits. Plaintiff brought the present lawsuit seeking review of the denial of benefits.

Plaintiff was born in 1969. She completed 10 years of schooling and has one daughter, who was 16 years old at the time of the hearing before the ALJ. Plaintiff is five-feet, three-inches tall and weighs 230 pounds, giving her a Body Mass Index ("BMI")of 40.7, which is on the low end of extreme obesity. See SSR 02-1p, 2000 WL 628049 *2 (Sept. 12, 2002) ("Level III, termed 'extreme' obesity and representing the greatest risk for developing obesity-related impairments, includes BMIs greater than or equal to 40."). Plaintiff is right-handed. Her past employment includes unskilled light and medium employment as a machine feeder, picker, food cutter, stores laborer, fast food worker, and small products assembler. Plaintiff claims she is disabled because of hypothyroidism, ligamentous laxity, lower back pain, obesity, carpal tunnel syndrome, fibromyalgia, and depression. The ALJ found that all of these qualified as severe impairments except that she found the evidence of depression and anxiety to be insufficient to support a severe impairment.

The ALJ found plaintiff could perform most aspects of light work. She found plaintiff could not lift more than 20 pounds occasionally or more than 10 pounds frequently; stand and/or walk for more than 6 hours in an 8-hour workday; sit for

more than 6 hours in an 8-hour workday; bend, stoop, crouch, kneel, crawl, or climb (ascend) stairs/ramps more than occasionally; climb ropes, ladders, or scaffolds; or use either hand to perform repetitive grasping (handling). In making these findings, the ALJ rejected some of plaintiff's subjective testimony as noncredible and certain findings of plaintiff's treating physician as inconsistent with or unsupported by the medical evidence.

In finding that plaintiff could perform her past work as a small products assembler, the ALJ relied on testimony of a vocational expert ("VE"). Over plaintiff's objection, the ALJ admitted the VE's testimony about available jobs in the economy. The ALJ relied on this testimony of the VE in making her alternative step-five finding that plaintiff could perform other work in the economy.

Based on the administrative record, plaintiff moved for summary judgment. As to some issues that she raises, plaintiff contends that she is entitled to an order directing that she be awarded benefits. As to other issues, she only contends that she would be entitled to a remand for further consideration. Plaintiff argues that the ALJ's finding that she could perform light work is not supported by substantial evidence, contending that the ALJ improperly rejected the opinion of plaintiff's treating physician, improperly relied on insufficient testimony

of the VE, and improperly rejected aspects of plaintiff's testimony as not credible. Plaintiff also contends that the ALJ improperly failed to conduct a mental residual functional capacity analysis based on evidence of plaintiff's depression and anxiety and failed to adequately consider plaintiff's obesity in combination with her other impairments. In making each of these arguments, plaintiff directly or indirectly relies on additional medical evidence that was presented to the Appeals Council, but not to the ALJ.[1] Defendant cross moved for summary judgment, contending the ALJ's findings are supported by substantial evidence. In her response to plaintiff, defendant repeatedly asserts that relying on the additional evidence to support the summary judgment motion is improper in that such evidence was not before the ALJ. Along with her reply, plaintiff filed a motion pursuant to sentence six of 42 U.S.C. § 405(g)[2] requesting that the case be remanded to the ALJ for consideration of the

---

[1] The additional evidence goes directly to the issues of the rejection of the treating physician's opinion and the finding that plaintiff's testimony was noncredible. To the extent those arguments are successful, findings as to plaintiff's residual functional capacity would be affected, thereby indirectly affecting the other contentions as well.

[2] "The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; . . . ." 42 U.S.C. § 405(g).

additional evidence.  Defendant was provided an opportunity to respond to that motion.  Since plaintiff desires to rely on the additional evidence, that motion will be considered first.

The hearing before the ALJ took place on October 2, 2003.  The ALJ's decision is dated April 13, 2004.  One aspect of the additional evidence consists of two reports from neurologist Milena Appleby based on May 8, 2004 examinations.  Dr. Appleby conducted a physical examination, including a Tinel sign test and Phalen sign test.  The first test gave signs of carpal tunnel in both arms and the second test gave signs of carpal tunnel in the right arm.  Dr. Appleby's initial conclusion was that plaintiff "has symptoms and signs of bilateral carpal tunnel syndrome" that should be followed up with an electromyogram (EMG)/Nerve conduction study.  R. 251.  That study was done the same day and Dr. Appleby reported the following:

> **FINDINGS:**
> Distal motor latencies of both median and both ulnar nerves were normal with normal amplitudes of CMAPs and normal conduction velocities.
> Minimal consistent F-wave latencies from median and ulnar nerves within normal limits bilaterally.
> Sensory nerve conduction study of right median nerve showed normal latency with normal amplitude of SNAP and decreased conduction velocity.  Sensory nerve conduction studies of left median, both ulnar and both radial nerves were normal.
> Needle EMG of above indicated muscles shows normal spontaneous activity at rest and on volition.

**IMPRESSION:**
   This electrodiagnostic study is consistent with mild left median nerve neuropathy due to carpal tunnel syndrome.

R. 252.

The other set of new evidence consists of medical reports concerning an orthopedic surgeon's operation on plaintiff's right knee on April 26, 2004. R. 256-61. The surgeon performed "Right knee arthroscopy and medial meniscal repair, chondroplasty of the patella, resection of the medial plica and a lateral reinacular release." R. 260. The diagnosis upon doing the surgery was that plaintiff had had "Right knee posterior horn tear of the medial meniscus, grade II chondromalacia of the patella and medial plica and patellar malalignment." Id. An April 7, 2004 preoperative report contained information, apparently provided by plaintiff, that she had been having right knee pain since striking her knee on an automobile dashboard two years earlier, the right knee had been aggravated a year earlier when she fell in the snow,[3] and it had become worse when she fell four months prior to April 2004. R. 258. As of a June 2, 2004 postoperative follow-up examination, plaintiff still had some hyperextension of the

---

[3] The reported statement is that she fell on both knees. This is consistent with a treating physician report from February 26, 2003 in which it is stated that plaintiff reported "increased pain in her knees" that began approximately two weeks earlier. R. 211.

knee that caused difficulty with stairs, but "her pain was much better, and she feels better. She has no swelling. She states that she is 80% overall improved." R. 256. It is ambiguous as to whether these improvements are compared to her preoperative condition or compared to how she felt nine days after the operation when she was referred for aggressive rehabilitation. See R. 257 (May 5, 2004 report).

Pursuant to sentence six of 42 U.S.C. § 405(g), a reviewing court can order that additional evidence be considered by the Commissioner if the claimant shows there is (1) new evidence, (2) which is material, and (3) good cause for failing to present it prior to a decision. Schmidt v. Barnhart, 395 F.3d 737, 741-42 (7th Cir. 2005); Perkins v. Chater, 107 F.3d 1290, 1296 (7th Cir. 1997); Sample v. Shalala, 999 F.2d 1138, 1144 (7th Cir. 1993).

> Evidence is "new" if it was "not in existence or available to the claimant at the time of the administrative proceeding." Perkins, 107 F.3d at 1296. New evidence is "material" if there is a "reasonable probability" that the ALJ would have reached a different conclusion had the evidence been considered. Johnson v. Apfel, 191 F.3d 770, 776 (7th Cir. 1999). Thus, new evidence is material only if it is relevant to the claimant's condition "during the relevant time period encompassed by the disability application under review." Kapusta v. Sullivan, 900 F.2d 94, 97 (7th Cir. 1990).

Schmidt, 395 F.3d at 742.

The evidence is new because the neurological examination and surgery both occurred after the ALJ had issued his decision. Defendant contends the facts about the knee are not new because the latest fall aggravating the knee occurred in January 2004,[4] before the ALJ issued his decision. The pertinent medical information, however, is not the fall itself, but the information found during the surgery. If a disability claim were to be based on the injuries caused by the fall, it would probably have to contained in a separate application for a January 2004 onset date. The surgery itself, though, provided additional insight into the condition of the knee. Plaintiff could not have had prior access to the information revealed during surgery. An MRI revealed some information prior to surgery ("slight patellar subluxation as well as a posterior horn tear of the medial meniscus" R. 258), but observation during surgery provided additional information. The additional evidence relied upon by plaintiff qualifies as "new" under § 405(g).

Since the information obtained during surgery was not known prior to the ALJ's decision, plaintiff had good cause for not presenting that information until after the ALJ had reached

---

[4]The court will follow the parties' assumption of a January 2004 fall. Four months earlier than the April 7, 2004 doctor's visit, however, would be December 2003, or possibly late November.

her decision.[5] The MRI and x-rays that are referenced in the April 7, 2004 presurgery report, R. 258, did exist prior to the ALJ's April 13, 2004 decision. In the interest of providing complete information, however, it would have been reasonable to wait until after the actual surgery in order to provide complete information to the ALJ. Plaintiff cannot be faulted for failing to immediately provide the April 7 presurgery report to the ALJ before he happened to rule six days later. That report, which is addressed to the physician who referred plaintiff to the orthopedic surgeon, apparently was transcribed on April 11[6] and has an apparent fax notation of April 14, which may be the date it was faxed to the referring physician. Good cause exists for not having submitted the knee surgery information prior to the ALJ's April 13, 2004 decision.

Performing an EMG on plaintiff was possibly being considered as early as the time of the hearing before the ALJ.[7]

---

[5]Plaintiff did present the evidence to the Appeals Council, but the Appeals Council denied review.

[6]The end of the report has these notations at the bottom: "D: 04/07/04. T: 04/11/04." R. 259. That may mean that it was transcribed on April 11, 2004.

[7]Q [ALJ] Now you've also suggested some carpal tunnel syndrome but I didn't see any tests that were done on your wrists. Did you have an EMG or nerve conduction study done?
A [plaintiff] He hasn't done them yet.

Whether to conduct such a test, though, would have been a medical decision controlled, at least in part, by plaintiff's treating physician. There is nothing in the record to support that plaintiff acted to delay having an EMG. Since the EMG was not performed until after the ALJ issued her decision, plaintiff had good cause for not presenting it earlier.

The issue, then, is whether or not the additional evidence was material, that is, whether there is a reasonable probability that the additional evidence would affect the ALJ's determination. A reasonable probability does not mean that it is more likely than not that the ALJ would change her decision. See Borders v. Heckler, 777 F.2d 954, 980 (4th Cir. 1985) (followed in Sears v. Bowen, 840 F.2d 394, 400 (7th Cir. 1988)); Booz v. Secretary of Health & Human Services, 734 F.2d 1378, 1380-81 (9th Cir. 1984) (same); Willis v. Apfel, 116 F. Supp. 2d 971, 976 & n.5 (N.D. Ill. 2000); Stidham v. Apfel, 1999 WL 135156 *2 (E.D. Pa. March 11, 1999). A reasonable probability means that confidence in the outcome is undermined. Newhouse v. Heckler, 753 F.2d 283, 287 (3d Cir. 1985); Davis v. Bowen, 1987 WL 27913 *3 (D.N.J. Nov. 13, 1987); Bradley v. Bowen, 667 F. Supp. 161,

---

    Q  Okay.
    A  I don't know if he's going to do them but he hasn't done them yet.
R. 318.

168 (D.N.J. 1987); Pysher v. Bowen, 1986 WL 11444 *8 n.8 (E.D. Pa. Oct. 9, 1986). Cf. Strickland v. Washington, 466 U.S. 668, 694 (1984) (for ineffective assistance of counsel claims, "reasonable probability" that counsel's error affected the outcome of the case means "a probability sufficient to undermine confidence in the outcome"); Eckstein v. Kingston, 460 F.3d 844, 848 (7th Cir. 2006) (same).

Defendant contends the knee surgery is not material because it was for a January 2004 injury that was rehabilitated within a few months, whereas the focus of the ALJ's decision was on 2003 and earlier. Defendant ignores that plaintiff reported that the January 2004 fall aggravated preexisting knee pain from incidents that occurred in 2003 and 2002. The record already contained at least one medical report referencing one of the earlier incidents, R. 211, and plaintiff testified at the hearing that she had right knee pain, R. 329. The April 2004 surgery report provided objective medical evidence of a problem with plaintiff's right knee. Although plaintiff identified three incidents (including two in the pertinent time period) that she believed contributed to the knee problem, the additional evidence does not establish how long any of the problems that were found had actually existed. If it were established that the tear,

chondromalacia,[8] and/or malalignment existed during the pertinent time period, the ALJ may have given more credence to plaintiff's testimony regarding her pain and limitations on standing and walking. Also, the fact that surgery was required to treat plaintiff's knee would have, at least partially, alleviated the ALJ's concern that plaintiff's testimony was not credible because none of her complaints had required anything but routine or conservative treatments. See ALJ's Decision at 7, R. 24 ("Based on the foregoing, the claimant's allegations regarding symptoms and functional limitations are not overall inconsistent with the determination made of her RFC. There are several factors, however, which are convincing that the claimant lacks full credibility. The undersigned first notes that any treatment the claimant has received for her alleged impairments has been inadequate and essentially routine and/or conservative in nature, and not generally the type of medical treatment one would expect for a totally disabled individual."). When the problems revealed during surgery first existed would be for the ALJ to determine. Plaintiff's statements regarding a 2002 automobile accident and 2003 fall and any related effects or medical documents are considerations. See SSR 83-20, 1983 WL 31249 *2-3 (1983). Or the ALJ may request the assistance of a medical advisor in

---

[8]Chondromalacia is softening of the cartilage.

determining the date of onset of the conditions. See id. at *3. While there is presently no direct medical evidence establishing how long the conditions existed nor detailed testimony about the prior knee incidents, plaintiff's statement about the prior incidents supports a reasonable probability that the ALJ would find that some or all of the conditions in her right knee existed in 2002 and/or 2003. There is also a reasonable probability that this evidence would change the ALJ's view of plaintiff's credibility.

While the EMG evidence may not by itself be enough to support a reasonable probability that the ALJ would change her decision, it contributes some possibility if not a reasonable probability. Considered in combination with the knee surgery evidence, there is a reasonable probability supporting a remand. The EMG evidence is somewhat weak in that the EMG itself only supported that there was carpal tunnel syndrome in plaintiff's left arm.[9] Plaintiff is right handed, but a left arm injury would still limit plaintiff in performing two-handed tasks. While the report refers to "mild left median nerve neuropathy,"

---

[9] Plaintiff points to the fact that the neurologist also performed Tinel sign and Phalen sign tests, both of which were signs that plaintiff had carpal tunnel syndrome in her right arm. Those, however, are subjective tests suggesting possible carpal tunnel syndrome and may have been previously performed by Dr. Skosey.

R. 252, it is not stated whether that is indicative of a mild form of carpal tunnel syndrome, or simply that mild neuropathy is a condition consistent with carpal tunnel syndrome.[10] In any event, the EMG supports that plaintiff has carpal tunnel syndrome. The fact that the EMG test occurred about a month after the ALJ's decision does not prevent it from being relevant to plaintiff's condition during the pertinent time period. See, e.g., Matuszewski v. Barnhart, 2003 WL 328277 (E.D. Pa. Feb. 12, 2003) (EMG conducted three months after the ALJ's decision). The neurologist reports could affect the ALJ's decision in two ways. One, the ALJ rejected conclusions of treating physician John Skosey as being conclusory. ALJ Decision at 6, R. 23. The neurologist reports provide some objective evidence supporting Dr. Skosey's conclusion that plaintiff had carpal tunnel syndrome. That would provide a limited basis for the ALJ changing her views as to Dr. Skosey's conclusions. Two, objective evidence of plaintiff having carpal tunnel syndrome would bolster, to a degree, plaintiff's subjective testimony about her abilities.

---

[10]According to a respected medical website, it is stated regarding testing for carpal tunnel syndrome with an EMG: "The nerve conduction studies, however, will not become positive until there is significant nerve damage. In addition, the severity of a person's symptoms is often not correlated with the findings of a nerve conduction study." http://www.webmd.com/content/article/78/95624.htm.

The additional evidence is new and good cause exists for not having presented it earlier. Considered together (and separately, at least as to the knee evidence), the additional evidence is material. Therefore, plaintiff is entitled to a remand in accordance with sentence six of 42 U.S.C. § 405(g). Since the ALJ's decision will be reconsidered in light of the additional evidence, it is presently unnecessary to resolve most of plaintiff's other contentions. See Skidds v. Barnhart, 2006 WL 1428257 *4 (D.N.H. May 24, 2006). Without ruling on the merits of plaintiff's other contentions, it is noted that it may be prudent and efficient on remand for the ALJ to expressly address the effects of plaintiff's obesity on her other impairments and to expressly clarify and recognize Dr. Skosey's status as a rheumatologist.[11] That would clarify the ALJ's reasoning and could eliminate those issues as possible grounds for review should the ALJ again deny benefits. Since the ALJ's use of the VE's testimony may change in light of the additional

---

[11] In her decision the ALJ referred to Dr. Skosey as an orthopedist, ALJ Decision at 2, R. 19, and specifically noted that "her doctor" had not recommended that she see a rheumatologist, ALJ Decision at 7, R. 24. Dr. Skosey's letterhead shows he is part of the Northwestern Orthopaedic Institute, but also indicates he is part of that Institute's Center for Arthritis and Osteoporosis. See, e.g., R. 202. The record also contains a prescription written by Dr. Skosey indicating he is an M.D. and Ph.D and a Rheumatology, Arthritis Specialist. See R. 212.

evidence, plaintiff's contentions regarding the VE testimony will not be resolved at this time. It is noted, though, that the ALJ must ensure that any VE testimony relied upon is consistent with the Dictionary of Occupational Titles or obtain a reasonable explanation why it is not. See SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000); Prochaska, 454 F.3d at 735-36; Romine v. Barnhart, ___ F. Supp. 2d ___, ___, 2006 WL 2821544 *3-4 (E.D. Tex. Aug. 17, 2006). Since consideration of the additional evidence would not require that the ALJ reconsider whether plaintiff has a severe mental impairment, that issue will be fully addressed at this time.

As to plaintiff's possible depression and anxiety, the ALJ explained:

> In this case, the claimant alleges being disabled, in part, due to depression and anxiety. The claimant alleged that as a result of her inability to exercise, she had gained weight and this has led to her feeling depressed (Exhibit 5E). In a pre-hearing memorandum dated October 1, 2003, the claimant's attorney indicated that the claimant suffered from "depression, and anxiety" (Exhibit 11E, pg 3). At the hearing, the claimant testified that she feels depressed because her painful condition has kept her from doing a lot of the things she used to do. In this case, an evaluation under sections 12.04 and 12.06 establishes that there is insufficient evidence to substantiate the presence of these disorders because although the treating orthopedist indicated that there was documented high levels of depression and anxiety noted on the claimant's health assessment questionnaire (Exhibit 9F), as well as citing

> symptoms of anxiety and depression with respect
> to her fibromyalgia (Exhibit 7F, pg 1), the
> medical evidence does not show that the claimant
> has a medically determinable mental impairment
> that has resulted from psychological
> abnormalities which have been established by
> medical evidence consisting of medically
> demonstrable phenomena that indicate specific
> psychological abnormalities (20 C.F.R. 404.1508
> and 404.1528).
> Since the claimant's allegations are
> supported only by the claimant's statement,
> rather than by "signs, symptoms and laboratory
> findings," it is not "medically determinable" and
> need be given no further consideration with
> respect to the remainder of the sequential
> evaluation or this decision generally.

ALJ Decision at 2-3, R. 19-20.

The ALJ discussed all the evidence of depression and anxiety. Other than Dr. Skosey's passing references to depression and anxiety in evaluating her possible fibromyalgia,[12] it is based entirely on plaintiff's subjective statements. Plaintiff's subjective description of her symptoms is insufficient to establish a severe impairment. 20 C.F.R. §§ 404.1508, 404.1528(a). It was within the ALJ's discretion to not take at face value Dr. Skosey's inclusion of depression and anxiety as symptoms since Dr. Skosey had incorrectly stated that

---

[12]On the Fibromyalgia RFC Questionnaire, Dr. Skosey checked the boxes that anxiety and depression were among plaintiff's symptoms. R. 228. Dr. Skosey also referred to a January 2003 health assessment questionnaire documenting high levels of depression and anxiety. R. 234 (Exh. 9F). Dr. Skosey, however, was mistaken in that belief. The health assessment questionnaire had boxes for depression and anxiety that were left unchecked. R. 215A.

a prior assessment had documented high levels of depression and anxiety. The ALJ's finding that plaintiff's depression and anxiety are not severe impairments is supported by substantial evidence. The ALJ was not required to follow the special techniques set forth in 20 C.F.R. § 1520a(c)-(e) because symptoms, signs, and laboratory findings did not establish a medically determinable mental impairment. Id. § 1520a(b)(1); Deshields v. Barnhart, 2004 WL 384994 *8 (E.D. Pa. Feb. 26, 2004); Smith v. Barnhart, 2003 WL 22917513 *3 (E.D. Pa. Nov. 25, 2003); Anderson v. Callahan, 981 F. Supp. 1258, 1267 (E.D. Mo. 1997).

Even if not a severe impairment, plaintiff contends that the ALJ was still required to consider the impact depression and anxiety had on the severe physical impairments that plaintiff did have, including the effect on plaintiff's residual functional capacity. However, since there is no evidence sufficient to establish that plaintiff had a medically determinable impairment, the ALJ was not required to take it into consideration. Cf. Rance v. Barnhart, 2003 WL 22709028 *9 (N.D. Ill. Nov. 17, 2003). An ALJ cannot be required to take into account a condition that has not been shown to exist.

On remand, the ALJ will not be required to conduct a mental residual functional capacity analysis.

IT IS THEREFORE ORDERED that plaintiff's and defendant's motions for summary judgment [15, 28] are denied without prejudice. Plaintiff's motion to remand her case pursuant to 42 U.S.C. § 405(g)--sentence six [31] is granted. Pursuant to sentence six of 42 U.S.C. § 405(g), this case is remanded to the Commissioner of Social Security for hearing additional evidence and the issuance of modified findings taking into account the additional evidence.

ENTER:

*William T. Hart*
UNITED STATES DISTRICT JUDGE

DATED: OCTOBER 27, 2006